Mr. Farrar, for the appellants, and may it please the Court. This case, a challenge to five provisions of Chapter 425 of the laws of Westchester County, comes before you, obviously, in a pre-enforcement phase. Before I get to that issue, I'd like to make a comment about general intendment of Chapter 425, which I think touches upon at least two of the factors. Mr. Farrar? Yes. Can you put the microphones a little closer to you? Sure. Thank you. I'd like to make a comment about the general intent of the statute, which touches on at least two of the factors that bear on pre-enforcement standing. And that would be the explicit targeting of sidewalk counseling by Chapter 425. And I'm quoting here from appendix page 277, which is the legislative committee memorandum, which states as follows. With respect to the reproductive health care facilities, the Second Circuit Court of Appeals in New York v. Greene, after characterizing the reproductive health context as particularly delicate, stated, and they quote, sidewalk counseling constitutes a legitimate First Amendment activity and is irrelevant when the conduct at issue persists following a request to cease. Defendants may have acted with a legitimate purpose in their first attempt to engage a patient. Excuse me. I don't see what this has to do with why we're talking about the legislative intendment. The legislative language says exactly that, right? It says that there is no legitimate purpose in conduct that persists after a refusal by the person being counseled, right? After an implied request to cease. Yes. Which is obviously problematic from a First Amendment standpoint. Well, why don't we talk about that then? Sure. Because, you know, what people said in the legislature, particularly when it seems to me that doesn't really go much further than what is actually in the statute itself. If that's your concern, then we should be talking about the language of the statute itself. Well, of course, we'll do that, Your Honor. Thank you for that. But here I think, and I'm looking at cases like the Kruger decision, which observed that when the legislative statements overwhelmingly indicate an impermissible purpose, you cannot turn a blind eye. So if the conduct that is prohibited by the statute is clearly not First Amendment protected, we should still invalidate it because of what the legislator meant or wished would happen? Well, the conduct is First Amendment protected. Well, then let's talk about that. I will do so. And while we're – since you raised the question of the request to desist, right, we've said that panhandlers have a First Amendment right to ask me for money, right? That's correct. And if I say, no, thank you, I'm not going to give you any money, I'm going to hurry. Goodbye. Does the panhandler have a First Amendment right to follow me where I'm going and continue to repeatedly ask for more money – for money? If you're talking about the solicitation of a panhandler as opposed to First Amendment protected – But that is First Amendment protected activity. There's a First Amendment protected right to ask people for money. Well, here we're talking about sidewalk counseling and a definition of implied request to cease, which makes it impossible – If I go and keep going. I mean, I'm – as a judge, I'm often – not as a judge. I am often, as a citizen walking down the street, requested to sign petitions. I don't want to give the guy a long explanation that I'm the judge. I can't sign political petitions. I may just wave him off. Does he have a right to follow me down the street asking me to sign the petition after I've indicated that I'm not interested? Well, I think he does have a limited right to follow you a certain distance, especially in the context of this type of speech, which communicates a message, not a solicitation for money. And here – If someone from Jewish Voice for Palestine sets up on the street outside a synagogue and when people are entering or exiting the synagogue, comes up to them and says, I want to talk to you about the atrocities being committed by Israel in Gaza. And the person says, no, thank you. I don't want to talk about that. I'm on my way to services. They can follow the person up to the door of the – a First Amendment right to follow up to the door of the synagogue, persisting with their message in the face of the person. Depends on what you mean by follow. If you mean take a couple of steps and make a second request and for that you go to jail for six months, I would say you have a serious First Amendment problem. And that's what is permissible under this statute. There is no definition of follow. Is it one step? Is it two step? Is it a single entreaty? Is it two entreaties? We have a – Well, it's one entreaty, isn't it? I mean, because it is follow and harass. So whatever the definition of follow is, it has to also be harassment. And the harassment as defined in the criminal statute has to do with being annoying and not having a legitimate purpose. The step that this statute goes beyond is to say you don't have a legitimate purpose to ask a second time. Do you have a constitutional right to ask a second time? I think you have a constitutional right not to be imprisoned for making two requests to communicate a First Amendment-protected message. That's what I believe. And that's what I think the First Amendment requires. Why isn't that just a sort of time, place and matter type thing? You have not – You don't have a right to even once broadcast your message through a loudspeaker after midnight in a residential neighborhood. What about being in people's faces? Why isn't that personal communication something that is entitled to – the person is entitled to some amount of protection from someone who persists in speaking to me about a particular subject on which I request them to stop communicating? So, Fox, you have a right to talk as much as you want. And if I overhear it, that's my problem. I don't have a right to stop you. But if you get in my face, why isn't there some right on my part to say no, thank you? And let that be determinative. Well, there are two problems with that. First of all, what you're advocating, apparently, Your Honor, is the right to criminalize unwanted speech. I don't think there is a power on the part of the State to pass a statute that criminalizes unwanted speech. So if you approach someone with a message you don't want to hear and you persist for even a second, you go to jail. I cannot imagine that that is not a First Amendment defect that cries out for rectification. Secondly, only in the context of pro-life sidewalk advocacy does it seem that we get arguments about how this particular type of restriction is reasonable when it would never be tolerated in the context of any other social advocacy. Are you sure about that? I mean, the two examples that I gave you, there may not be a statute about it, but maybe that's because those folks haven't yet engaged in that kind of activity to a degree that it makes it of interest to the legislature. I'd rather imagine that, you know, if people were standing outside of places of worship, for example, and persistently talking to parishioners who don't want to hear about it, about clergy sex abuse, or about the actions of the State of Israel, I would imagine the legislatures might get busy on it. The question is really what is the – is there no – does no individual have a right to not engage in conversation with someone on the sidewalk who insists on delivering a message? Well, there may be a social right. There may be a right in terms of courtesy. But there isn't a criminal offense, and there should not be under the First Amendment, for simply asking someone to engage in a conversation more than once. I can't imagine that that's permissible under the First Amendment. And no statute like this exists anywhere in the United States where an implied request to cease, which is not even defined, which could consist, as one legislator said, by default in silence, the mere silence of someone passing by causes you to be criminally prosecuted and jailed for up to six months because you said something twice. That's literally what's going on here. And it's not the kind of law we've ever seen enacted as to any protest movement in the history of the United States. And furthermore, it's content-based because it's obviously directed at sidewalk counselors who have a pro-life message and no one else. Doesn't it apply if someone, if some pro-abortion person were doing the exact same conduct outside a clinic that the pro-abortion advocate thought was discouraging people from exercising a choice to abort a pregnancy? It would apply to that, too, wouldn't it? That would be two content-based operations. Both of them involve opposition to what a clinic is doing and nothing else. If you support the abortion clinic, you're not prosecuted. If you support the pro-life pregnancy center, you're not prosecuted. You can be as persistent as you like about your speech and you might go to jail. There are people going up to, I'm here to get an abortion, and there are people who are coming up to me saying, you know, you really should get an abortion and this is a problem. You know, or that there are people who are supportive of what people are doing at a pro-life clinic who are somehow harassing the folks going there with messages of support which they don't want to hear. Maybe someone who gets a message of support doesn't want anyone to speak to him or her as an approach. And maybe that person could claim to be. Let me just understand one thing. Sure. Is your argument that this is not content-neutral? I thought that if it also applies to, for example, and I think that this is what just Lynch is referencing, these crisis pregnancy centers equally, then that would be content-neutral. But you're actually saying that it's not. Well, if someone would go to a crisis pregnancy center to support the work of that center and talk to someone outside that center who's opposed to that and supposedly harass that person, there'd be no prosecution. So there are two content-based that. What makes you say that? Because. Because these are all about, I mean, I think there's nothing that exempts protesters in front of a crisis pregnancy center. Yes, but only in front of a crisis pregnancy center and only those who oppose the mission of that crisis pregnancy center. So that's a second content-based application. But even before we get to a content basis, we have obviously here discrimination that cannot pass the test of intermediate scrutiny. Because we have here basically one cited pretext for the adoption of Chapter 425, which was a trespass incident in 2021. And for that, the persons involved, a priest and two laypeople, were occupied at a waiting room and handed out a rose and some literature, were arrested, convicted and jailed. And those same three persons were subjected to a targeted injunction by Judge Karras in the Southern District of New York only weeks ago. If you look at this statute, none of these challenge provisions have anything to do with trespass. So there's no fit, much less the close fit between ends and means that is required by McClellan and Coakley. And the narrower tailoring requirement in general for intermediate scrutiny. The Madsen case says there must be adequate breathing space. I don't see adequate breathing space. If you say to someone twice something he doesn't want to hear, you go to prison for six months. That's what this law provides. Also, there's a layering of restrictions. We have five different restrictions. Under Brown v. Pittsburgh, the layering of two restrictions, a buffer zone and a bubble zone, was considered to exceed the narrow tailoring requirements. Now, there is no need in this statute. Can I ask you a preliminary question about standing? Sure. As I understand it, one of the issues or one of the reasons you think that the national or international organization has standing is because of an effect of this statute, potential effect, near view effect that it would have on the core activities. Is that right? That's right. The core activities would be the local vigils, which are essential to the mission of the national organization. Well, what are those core activities? The local vigil is basically a 40-day vigil in which the pro-life advocates line a sidewalk or other perimeter outside an abortion facility and pray and distribute literature and approach women to offer counseling, for which the national organization provides both the literature and the training and guidelines for the counseling. Now, what has happened in Westchester County because of the enactment of Chapter 425, and this is uncontested below, is that the sidewalk counseling has ceased at both of the subject locations. People now stay away from the driveway. But the core activity I thought you said was training. No, it's counseling. It's actually counseling. Okay. So counseling. Approaching people on the sidewalk to offer literature and to converse, which under this statute if you persist for three seconds, you go to prison. It's really that simple. Mr. Ferraro, let me ask you some simple questions about the case. What exactly is the relief that you're seeking? We want an injunction against enforcement of the provisions that we're challenging, which are the subdivisions A, C, E, F, and H. On multiple grounds, content basis we've already touched upon, the obvious lack of narrow tailoring we've touched upon, and the problem is you have a statute laden with vague, undefined terms, such as implied request to cease, follow, harass, which is defined specifically, I would note, to exclude a First Amendment defense. This was in the colloquy between Legislator Smith and one of the county attorneys. So the effect of don't worry, we've got you covered on the defense of a legitimate purpose because this would cover even protected speech. So we have the implied request to cease. We have harassment defined. Can you say protected? I'm sorry. Just and then maybe you're continuing to answer Justice Kavanaugh's question. Sure. So at least a number of the subdivisions of 425.31, set aside H for a moment, seem to have an overall requirement that whatever interference occurs, occur through force, threat of force, or by physical obstruction. Yes. That seems to be. Yes. That seems to be conduct that is at the core of those subdivisions. Well. And set aside for a moment H. Sure. Okay. So focus on, what is it, C, E, and F. No, not C. C is the harass and follow. A, E, and F. All right. Could you just address that? Sure. So what do we do with that language? And why is it in that? Why doesn't that cabin the scope of these provisions to effectively conduct and threatening or use of force conduct? Well, the implied request to cease provision obviously extends to any form of conduct, not just physical conduct. Acts or conduct. That's in C. That's about the specific definition of the word harass, which is not in A, E, or F. And as to the other terms, we have a reference specifically to reliance upon the decision in New York v. Griep, which broadly defines the terms Your Honor has just mentioned in such a way as to clearly reach protected conduct. And I'm thinking in particular of the observations in Griep that, and I'm quoting, there is no statutory carve-out under existing clinic access laws for de minimis conduct. And the implied request to cease we've touched upon. Follow. No, no, no. We're talking about following. We're not talking about any of the language in C. Yeah, okay. I think that Judge Loyer's questions are trying to maybe focus you back on C, but you are asking, as you just said, for an injunction against A, E, and F. And A, E, and F each have as one of their, as really the core requirement, whatever else you're doing, it has to include by force, threat of force, or physically obstructing or blocking. Yes, Your Honor. And I guess the question that you're being asked is, why is force, threat of force, and physically obstructing or blocking First Amendment protected conduct? Because of the overly broad definitions of physical obstruction, for starters, which, according to Griep, and according to the broad definition of physical obstruction in Chapter 425, means, and I'm quoting from Griep, slight deviation from a path or any delay at all. That's 105 in that decision. And then there's attempted obstruction. Even if you attempt to. I'm sorry. Can you tell me where that definition is? Because what I see in the physical obstruct or block definition involves physically hindering, restraining, or impeding, or rendering ingress or egress, or passage to and from, impassable, unreasonably difficult, or hazardous. Yes, Your Honor. But that definition goes far beyond the definition in both Federal phase and the State equivalent of phase. Well, apart from whether it's beyond that definition, could you explain to me why this definition is addressing First Amendment protected conduct? Because if you're engaging in sidewalk counseling and you pose even the most minimal impediment under this definition, a slight deviation from a path, a slight delay, any delay at all. I'm sorry. You are reading from a, first of all, a vacated, as I understand it, decision, but number one. And you're stressing that we, in that vacated decision, made a determination that even de minimis conduct, right, might satisfy the statute of issue there. But here, as Judge Lynch's question, I think, rightly points out, this really It seems to focus on not just, not de minimis conduct, but conduct that is anything that renders ingress or egress in or out of the facility unreasonably difficult or hazardous, which seems to be more than de minimis conduct. Why is that argument wrong? Because the interpretation of these terms has to be seen in light of the understanding of the legislators that once they were doing Are you going back to the legislative? So, just go with me on this, Mr. Farrar. Just help me. If I'm less interested in what the statements of the legislatures, legislators might have been, and I'm much more interested in the language of the statute that's before us, then what do I make of the fact that it refers to, among other things, rendering ingress or egress unreasonably difficult or hazardous in connection with the argument that this covers de minimis conduct? Because under the standard of the Picard decision, we need only present to you an arguable interpretation of these terms in light of what In Picard, the plaintiff had actually been arrested for violating the statute in the past, which puts a somewhat different slant on the various government arguments about whether there was a reasonable interpretation of the statute that made it overbroad. Here, I'm just having trouble what making access to the facility impassable, unreasonably difficult or hazardous could be construed as causing someone to take a slight step to the left or right. Because that is the interpretation that the legislature approves The legislature doesn't enforce the statutes. The legislature isn't the police force. The legislature isn't the courts. No, but my point here is we have an arguable interpretation of what's going to be enforced with respect to these terms because of the legislative attitude toward these terms, relying upon the Griep decision and the assistance of the New York Attorney General in drafting this statute that also argued successfully in Griep. Maybe the assistance they got was to try to make sure that it was constitutional by limiting the language. But the language is not limited. It goes far beyond FASE's definition. Why does FASE set the outer limit of this? The question is whether this statute is unconstitutional, not whether this statute is the same as or different from a constitutional Federal statute. I understand that, Your Honor. But our position is, and under Picard, whether the arrest occurred or not, that might have been sufficient evidence, but it isn't necessary. The standard in Picard applies whether or not there was an arrest. And you're saying that this language is reasonably interpreted to mean any de minimis deviation from a path. That's what the three-judge panel thought. And that decision was not vacated on the merits. Wait, wait, wait. What three-judge panel has interpreted this statute? They interpreted a more narrowly drawn clinic access law, FASE, to cover even de minimis. So it's not this statute? Right. They were talking about FASE and the State law equivalent. And does FASE have that language that we're talking about this time? No, it does not. It's limited to rendering ingress or regress unreasonably difficult or hazardous or impassable. Now, this statute adds all kinds of qualifiers, such as hinder, stop, impede, and so forth. And the arguable interpretation, and Picard makes this clear, as long as we're not outside the realm of the arguable, if our interpretation is at least plausible, then it is standing. Yes. And then the next question is, is it constitutional or not? Well, I don't know. Which is not what Picard even dealt with. That was just about the standing question. And I think that's what's going to happen in this case, and I've had long experience in defending pro-life sidewalk advocates, is that you will have interpretations and the court in Griep, New York v. Griep, pointed to such cases where slowing cars, for example, was deemed a violation of FASE, or being on the sidewalk and blocking part of the sidewalk so that people had to walk around you was considered a deviation sufficient to violate FASE, and so on. Too often, de minimis conduct has been found to trigger violations of these more And I think that this statute was drawn to add additional qualifiers to make it more likely that de minimis conduct would trigger a violation. And we've never seen anything like subdivision C, although we've covered that. And the total effect of all these prohibitions, the layering of the prohibitions, I refer again to the Brown case, has had a chilling effect. And that chilling effect in itself is a constitutional violation. I don't think it's being flippant to say that when you add all of these terms together, five overlaid prohibitions with interwoven definitions that repeat themselves, you would almost need legal advice to conduct sidewalk advocacy if you're going to approach someone, and as Your Honor indicated, merely saying something twice would trigger six months' imprisonment and a $1,000 fine. That cannot be tolerable under the First Amendment. Now, Mr. Furman, I'll go back to my rather simple question earlier about the relief you're seeking. What's the procedural posture at this point? Do we have a preliminary injunction? No. We have, right now, we're in the middle of summary judgment practice for moving toward a final judgment. I see. And that's going to be bundled and submitted to the Court sometime in June. I think it's mid-June as a bundle. Back up again. We're bundling the papers. It's that process that Judge Halpern likes. And we're going to submit the entire summary judgment paperwork in the middle of June. But the judge indicated that he wanted a generous extension of time on that, or at least he agreed to it, to find out what the outcome is here. And I think the comment we've had already indicates that we're looking at a hair-trigger standard. I don't want to hear you. You've spoken to me twice. Go to jail. That's literally the intent of this statute. What exactly is being appealed here? We're appealing the subdivisions that involve these broadened definitions. You're appealing the denial of a preliminary injunction against the enforcement of any of subdivisions A, C, D, E, F, and H. Is that right? Actually, no, Your Honor. It's A, C, E, F, and H at this point. Right. Because D is no longer an issue. It's been repealed. No, no. D has not been repealed. We're not challenging it. You're not challenging it. Because of the counterman decision. Right. We feel there's adequate protection. So A was before us, as I understand it, is A, C, E, F, and H. That's correct. And in what way is it before us? Well, we're appealing the denial of the preliminary injunction. That's all I want to know. And for the reasons that have become apparent during this discussion, we're appealing it because of what we see to be a situation in which five overlapping provisions will involve hair-trigger liability, resulting in criminal prosecution. Okay. Well, you've reserved a little time for rebuttal. I'll catch you. Two minutes, I think. It's well past your time. I know, Your Honor. But it's all good. It's all good. Thank you, Judge. We'll hear from your friend on the other side. Thank you, Your Honors. John Noda for Atelier Westchester County. I'm joined by my colleagues, Elida Marcos and Shauna McLeod. Let me start by saying there's no question when a legislature is enacting a law that implicates First Amendment rights or the court is reviewing that law, you've got to look to the law itself and see what the legislature actually enacted and how that affects the First Amendment. This law does not ban sidewalk counseling or protesting. Anti-abortion advocates can counsel, hold up signs, hand out leaflets, stand, approach people up to the doors of a reproductive health care center. The law, therefore, in our view, leaves open ample alternative means of communication of a message and is simply a place and manner restriction. And as the appellant acknowledged, they have conducted vigils after this law was enacted, and in the record are examples of people at those vigils protesting. Maybe I misunderstood. That was my understanding, but maybe I misunderstood. I thought he said that they are no longer able to conduct vigils. I think the claim is that fewer people are coming to the vigils. But when you look at what they're telling 40 Days for Life, at least, is telling people what to do at the vigil, and I'm referring to Section 8104 of the appendix, this is an exhibit to their complaint. They tell their members, I will not obstruct or block driveways, sidewalks, roadways, or any lawful passage. I will not threaten, curse, yell, or verbally abuse anyone. I will be polite and cooperative with law enforcement. So it's clearly they're telling their members not to violate any of these laws. So there's no – it's hard to imagine how there's a chilling effect when the conduct that they're telling their members to engage in, their expressive conduct, is not a violation of any provision of the Western State. I guess I'm – subsection C. I'm happy to do that, Your Honor. Because the others, it seems to me, you've got some pretty strong arguments because of what the statute requires for any conviction. But Mr. Ferrara says, look, if I want to go up to somebody and offer them a leaflet about any subject under the sun that's political or otherwise, and they tell me go away, I should at least have the right to say, no, no, please listen to me. I want to talk to you further. And if they keep walking away, he says I have a right to follow at least a few steps. Would that not be prohibited by this statute? Yes, it would be. If it involves serious, annoying, and threatening conduct, which is required. Well, it doesn't necessarily say anything about threatening, right? Harass means to engage in a course of conduct or repeatedly commit conduct or acts that alarm or seriously annoy another person. I'm sorry, not threaten, alarm. Alarm or seriously annoy. Well, or seriously annoy, right? I mean, I can get annoyed pretty easily. I get annoyed sometimes with lawyers. That doesn't give me the right to chuck them out of the courtroom. Well, remember, there's a C-enter standard as well. So you'd look to a reasonable person who's doing the act, whether they would, would they intend to annoy or seriously, I keep on getting this mixed up, seriously, alarm or seriously annoy. So the intent of the person doing it. And as far as the recipient, that has to be a reasonable person who would be affected. And there's an issue here also with the privacy rights of an individual seeking reproductive health care, whether it's an abortion or any kind of reproductive health care, the privacy rights not to be accosted when you're trying to access medical services. Why is that an elevated, is that a greater right to privacy than I have as I walk down the street, going about my business, not interested in political discourse face to face with anyone? Well, I think an argument could be made that there is a greater right for privacy for someone seeking medical services and being accosted. Medical services and someone's health issues can be an issue that implicates private interests as opposed to just walking down the street, I believe. And I think that's a valid consideration in evaluating the constitutionality of this law. Let me address specifically 42531C. So it's interesting. In U.S. Wesleyan, a second circuit opinion in which Your Honor, Judge Corbanus was on the panel, talked about the distinction between regulating speech and regulating conduct with expressive components. And this statute, 425.31C, regulates in the county's view expressive conduct. And it requires conduct, following, not just standing or approaching. And as you said, Judge Lynch, it deals with a course of conduct and repeated acts that alarm or seriously annoy. And the other part is serve no legitimate purpose. But obviously there is a legitimate purpose in approaching to express ideas, right? Yes, there is. And so the no legitimate purpose issue turns really on the right to say no. Yes, Your Honor, it does. An express or implied consent is deceased. And as I said, there is a knowingly requirement. And as Your Honors may be aware from our briefs, this was modeled after the New York City law. New York City has a law that prevents following and harassment. And that was dealt with in Griep. And we're not relying upon anything that happened in Griep because that decision was vacated. And we tried to, the county tried to improve the New York City law by defining harassment. The New York City law does not define harassment. And it does not attempt to define no legitimate purpose. The definition of harassment has been in the penal law, which was adopted in this county law, 425.31C, is penal law section 240.263. That law has been held constitutional by New York State courts. And, in fact, the no legitimate purpose provision has been upheld as constitutional by the New York Court of Appeals. So the county law is based on established case law interpreting the term that I just mentioned, the definition of harassment and no legitimate purpose. So the county grounded its law in New York State law that's been upheld. May I ask you about another issue relating to 425.31C, which is the, and I think Mr. Ferrara pointed this out a few times, the reference to an implied request to cease. Yes, I think that a reasonable person would know that if someone walked by you, you shouldn't continue to follow them. If they walked around you to avoid your trying to speak to them or you waved them away, that's an implied request to cease. I think it's, the law is not unclear in that regard. What about a blank expression? A blank expression, that would likely not be an implied request to cease. If someone just says nothing and the person keeps following them and talking to them, then that's not an implied request to cease. If there's a gesture or actually trying to walk around someone to get past them, that could be an implied request to cease. I would also note, interestingly enough, in McCullen v. Coakley, as this Court's probably aware, as you are aware, the Supreme Court invalidated a Massachusetts law and said that if the term harassment is alternatively construed to avoid vagueness and over-the-breath problems, the New York City follow and harass provision might be a permissible alternative to the law invalidated in that case. And that's what we tried to do. We tried, the Westchester County law tries to define harassment to avoid vagueness and over-breath problems. I also would address another issue that was raised by Mr. Ferrara. This law does apply to crisis pregnancy centers. And, in fact, again, in U.S. v. Wesleyan, the Court pointed that out, that it would apply to a crisis pregnancy center. And in the Red Rose decision, Judge Karas mentioned that— If we were to disagree with you, just to go back to the implied request to cease, what's the consequence of that? Because I'll tell you, sometimes you get a blank expression from three judges on a panel which tells the lawyer to stop speaking, right? I think— And so that—implied—this is just my way of saying it—implied request to cease is a very difficult thing to ferret out. And that's why I agree it would be a post-question if someone just had a blank stare and stopped. But if they continued walking around someone that was trying to talk to them, I think that could be deemed— If we disagree with you and think that that part is vague, what is the practical consequence? What should we do? Well, we have a severability provision. But I don't know that you could sever one little part of a longer law that says implied request to cease as opposed to express request to cease. I would submit that the implied request to cease is a valid and understandable provision. I understand that, but that's okay. And just to follow up on the—by the way, the cease and desist—the provision about—the provision that requires a request to cease is similar to a cease and desist provision that was upheld in Pro Choice Network v. Schenck, in which Judge Cabranes was in the majority in that case. There was an en banc decision, and that was upheld by the Supreme Court, a cease and desist provision. And this law is similar to that, which requires an express or implied request to cease. So would you also focus, Mr.—is it Nona? Nona. Nona. Mr. Nona, on another aspect of 425.31H— Yes. —which has not been the subject of a lot of colloquy, but H does not have as a predicate the physical obstruction force or threats of force that the other—this is A, E, and F have. And what do we make of that fact? In the absence of that language, which arguably cabins those other sections to forms of conduct and not just de minimis conduct. Well, subsection H uses the terms interfere with. And interfere is defined as to stop or restrict a person's freedom of movement. So it does implicate some physical activity, but also says to stop, obstruct, or prevent through deceptive means or otherwise. And I'll address that in a moment. It also only applies in three situations, where there's interference with medical procedures or treatments being performed at such reproductive health care facility, the delivery of goods or services to such reproductive health care facility, or persons inside the facility. So it's limited to those three areas and interfering with them. The reason the law added the deceptive means was in connection with the trespass that occurred in Westchester, the anti-abortion advocates were able to get access by making fake appointments to get access. So they got in by deceptive means. And Judge Karras, in his decision, which dealt with not only the trespass in Westchester, but one in Manhasset, Long Island, also pointed that in that case, there was evidence that access to the interior of the reproductive health care facility was gained because of a deceptive practice that was a fake appointment. Now, one can argue that a fake appointment is still First Amendment protected. But in U.S. v. Alvarez, the court, the plurality of opinions, and there was one by Judge Kennedy, Justice Kennedy, and one by Justice Breyer, found that false statements that cause legally cognizable harm tend not to offend the Constitution. So if you're using a false statement to get access so that you can interfere with the provision of medical procedures or treatments, which that trespass did do, there's no question about it, then it's not protected by the First Amendment. So that's how I would respond to any question about it. It's a funny sort of definition because it interfered with means to stop or restrict freedom of movement through deceptive means. I'm having a little trouble. And I understand what you're saying about getting inside by deceptive means. But getting inside does still not violate the statute. What violates the statute is stopping or restricting freedom of movement through deceptive means or stopping, obstructing, or preventing one of the three things that are covered by the statute through deceptive means. And I'm not sure I get – if I make a fake appointment and get inside, I still have to do something else before I violate the statute, it seems to me. It doesn't say that you violate the statute by knowingly getting access to a facility by deceptive means. That's not a violation. No, you have to obstruct the medical procedures or treatments being performed there, which did happen in the case of the subway. Yes, I understand. It may have happened. I'm just saying I'm not sure what the linkage is of the deceptive means to the actual interference with treatments. The fake appointment was the way to get access to the interior of the facility to interfere with the provision of medical services. Exactly. But it seems to me if that through deceptive means were not in the statute and someone had used deceptive means to get in, they would still be violating the statute if once they're in, they interfere with medical procedures. And conversely, if they get access by deceptive means and then don't do anything else except sit there, it's not clear to me that they have violated this statute. So I'm still having trouble understanding what work the deceptive means is doing in this subsection. I think it's trying to prevent someone from using a fake appointment to gain access. And we all know if they gain access, the purpose of the gaining access is to interfere with the medical services being provided. That's as may be. May I ask you a few more questions about subsection H? So there is also, it doesn't end with deceptive means, it says or otherwise, right? Yes. Can you explain to me what that means and more importantly, how I can determine with some level of confidence and clarity what that means and what someone might understand that to mean in a reasonable way? I think it has to refer back to stop or restrict a person's freedom of movement or stop, obstruct, or prevent. Because it's an or after deceptive means. Or otherwise. So it would be some other way of achieving those goals of stop, obstructing, or preventing. What about successful sidewalk counseling? You get everybody who's going there to change their minds through what some might regard as deceptive means by saying things about abortion procedures that are arguably untrue. And then nobody goes to the clinic anymore and they close down. Is that a violation of the statute? If the counseling is truly sidewalk counseling, it's probably not a violation of the statute. I don't think it's a violation of the statute. But if it happens so frequently through, you know, I can think of a situation where, let me give you this example, where someone approaches a person entering a reproductive health care facility to get an abortion and delays their ability to get an abortion so they couldn't get it anymore because of false statements. I think that could be an act subject to subdivision H. Again, it would depend on the facts. I engage in a totally, you know, I'm out there and I engage in a conversation. There's no implied or there's no implication that the person doesn't want to engage in that conversation and I convince that person not to go to the appointment. That's not a violation? That's not a violation. That's not part of the otherwise. And why is that not a violation? Because that's traditional sidewalk counseling. If you look at what the plaintiffs allege they want to do, and that's in the Second Amendment complaint, paragraphs 26 to 47, what they want to do is, quote, peacefully approach expectant mothers and others entering or leaving facilities to engage in short, quiet conversations at a normal conversational distance about alternatives to abortion. That is not a violation of any provision of this law. What the plaintiffs have alleged they want to do. Counsel? Yes, sir. I understand that we understand that the district court denied a preliminary injunction. Yes, Your Honor. And we have before us the record on which the district court acted, right? Yes, Your Honor. Now, Mr. Ferrara has referred to the ongoing discovery process with summary judgment motions to follow. Is that correct? Yes, Your Honor. The county has filed its motion and the plaintiff's motion is due in the middle of June. So in the nature of things, the record is still incomplete. I'm just wondering about what we do with the records before us and whether we would not be effectively interfering with this ongoing process in the district court. I would submit, Your Honors, that you're not interfering because you're simply affirming the denial of a preliminary injunction, which is preliminary relief, and the district court below can reach a different decision on a motion for summary judgment. That's what I was asking for. Thank you, Your Honor. So what would happen is, I mean, it's going to summary judgment, and as you point out, you could have a very different, depending on the nature of the discovery and so on, the evidence, you could have a different result. Yes, and there have been depositions already taken and documents produced, so the record for the summary judgment motion is essentially complete. What is the issue on summary judgment? The same issues being raised on this appeal by appellants. Yes, Your Honor. So for further proceedings in the district court, do you think the parties require any extended statement by us on the preliminary injunction? I don't believe so. I think you could affirm on the record so far on the preliminary injunction motion. You can affirm the denial of a preliminary injunction. I don't think Judge Halpern abused his discretion or made some gross error of law in denying the preliminary injunction. Thanks very much. Thank you. Mr. Brewer. Thank you, Your Honor. Subdivision H is not at all limited to what goes on inside the facility. You've got to speak into the microphone. Yeah. The activity is included, but not limited to. So it could be any activity deemed to involve deceptive means or otherwise, inside or outside the clinic. Well, yeah, but it has to be interfering with specific things. Right. Medical procedures or treatments being performed for the delivery of goods and services. Well, actually, the language says including, but not limited to, interfering with medical procedures and delivery of goods and services. And there is case law to the effect that if you interfere with an escort, for example, on the sidewalk, you've interfered with clinic operations. And here we have the added element of deceptive means or otherwise. And overall, the statutory scheme, I should have stressed this earlier, there's no need for any of it because you have existing clinic access laws. Again, there's no fit between the incident of trespass cited and all of these. I don't understand why there needs to be a fit with a specific provocative instance. In other words, if something bad happens, and the legislature then undertakes to investigate what it ought to do, why is it restricted to prohibiting the specific thing that provoked the inquiry? Because the First Amendment requires precision of regulation and narrow tailoring. Once they have announced what they intend to do or whatever they narrowly have to be narrowly tailored to, that would be narrowly tailored to preventing what happened in one particular place at one particular time, doesn't it? Well, the issue here and the only cited pretext for adoption of the ordinance was a single incident of trespass. There simply was no problem with sidewalk advocacy at these locations. This is a solution in search of a problem. And so it violates the requirement of narrow tailoring. And the five restrictions piled on top of each other, plus civil liability for triple damages and attorney's fees with a five-year statute of limitations, plus in concert liability for the liability imposed upon you for the conduct of others alleged to have acted according to a common scheme or plan, and on top of all of that, injunctions by the county attorney, have caused a massive chilling effect. So sidewalk advocacy, not the vigils. The vigils have been reduced by 50 percent. That's uncontested below. That's just standing there. But the sidewalk advocacy, the distribution of literature, approaching the driveway, approaching people, has ended. It's been totally chilled by this massive statutory scheme, none of which has anything to do with trespass. And that's our basic complaint about the scheme itself and why we need injunctive relief from basically all of it, because none of it is necessary. Thank you. Thank you very much. We'll reserve the decision.